IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAJUAN FLEMMING,

    Petitioner,

  v.

DAVID BAUGHMAN, Warden,

    Respondent.

No. C 17-07358 WHA

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Dajuan Flemming is a state prisoner serving a sentence of life in custody for first degree murder. He seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. For the reasons stated below, the petition is **DENIED**.

## STATEMENT

The following facts are taken from the California Court of Appeal opinion. On March 25, 2009, petitioner Dajuan Flemming was visiting his cousin Raul Toscano Jr.'s home in Oakland. That evening, unidentified persons drove by the home in a red Mustang and shot at petitioner and his friends, injuring petitioner's uncle, cousin, and one other person. When interviewed by police shortly after the shooting, petitioner refused to provide information about the shooter. Two days after the shooting, however, following the crimes in question, petitioner told police the shooter had been a passenger in a red two-door Ford Mustang with an undersized spare tire on the right rear side (Dkt. No. 13, Ex. 8 at 2–4).

**United States District Court**
For the Northern District of California

On March 27, 2009, petitioner and his friends Rico Cantres and Tyree or Raul Toscano Jr. drove around Oakland searching for the red Mustang. At the time, the car was being leased by Giovanna Warren. Around 3:00 p.m., Cantres spotted the Mustang outside Hoover Elementary School, where Warren and friend, Decontee Bility, had driven the car to pick up Warren's son. Petitioner told police that although he had a gun in his hand at the time, he did not want to fire at the school because there were children nearby. After picking up Warren's son, the two women drove westward down Brockhurst Street. At some point, Warren told Bility to retrieve her son's cell phone from him. While Bility was turned around, Cantres's truck intercepted the car. Petitioner fired about five to seven shots out the truck's open window from ten to twelve feet away. One of these shots passed through Bility's abdomen. Another struck the left side of Warren's head. Warren died that evening and Bility spent weeks at the hospital undergoing surgery. Following the shooting, petitioner jumped out of the car on a different street and dropped his cocked gun. Police arrested petitioner based on a description by a woman who had seen petitioner drop his gun (*id.* at 4).

At 8:03 p.m. that day, a police officer took petitioner to a homicide interrogation room. At about 4:30 a.m. the next morning, Sergeants Todd Crutchfield and George Phillips interviewed petitioner and he confessed to the shooting during this interview. He stated he fired at the Mustang in hopes of forcing the Mustang to move and out of fear that someone in the Mustang would fire at them first. At 9:44 a.m. Deputy District Attorney Joni Leventis and Inspector Nina Garcia entered the room and began interviewing petitioner. Petitioner repeated much of what he said to the detectives, including his belief that he acted in self-defense. Petitioner called his mother and Shakiyla Black, the mother of his daughter, a few hours later. He told them, "They got me on camera. It is—it is—I mean, it is what it is mama" (*id.* at 5–6).

In February 2010, an information was filed against petitioner in Alameda County Superior Court for the following: (1) first-degree murder with the special circumstance of discharging a firearm from a motor vehicle and (2) attempted premeditated murder. The information alleged further enhancements for personally and intentionally discharging a firearm and inflicting great bodily injury and personally using a firearm with respect to both counts. Trial commenced in

October 2010. The jury found petitioner guilty on both counts. Petitioner was sentenced under count one to life without parole and a consecutive 25-year-to-life enhancement for the firearm clause under California Penal Code § 12022.53(d). Petitioner was further sentenced under count two for life with the possibility of parole and a consecutive 25-year-to-life enhancement for the firearm clause under § 12022.53(d) (*id.* at 7). The state appellate court affirmed the judgment in full. The California Supreme Court denied a petition for review without comment. The United States Supreme Court denied certiorari in October 2013 (Dkt. No. 13, Exs. 8, 10, 12, 13).

In August 2014, petitioner filed his first state habeas petition with the California Court of Appeal. After denying the petition, the California Court of Appeal directed petitioner to first file with the state superior court, which the petitioner did in late August 2014. This petition was denied as untimely, and alternatively, on the merits. Petitioner subsequently filed the petition with the California Court of Appeal. It was denied without comment, and then with the Supreme Court of California which also denied it without comment (Dkt. No. 13, Exs. 15, 17, 19, 21).

Petitioner then filed this federal habeas petition alleging the following claims: (1) ineffective assistance of counsel by failing to investigate an present evidence of petitioner's impaired mental functioning, (2) ineffective assistance of counsel by failing to investigate and present evidence that the homicide victim was part of a violent drug dealing crew that had attempted to kill petitioner, (3) the state court erred in admitting petitioner's initial statement to officers in violation of his Fifth Amendment and Fourteenth Amendment rights, (4) ineffective assistance of counsel by failing to competently supervise the law student who conducted a suppression hearing and failing to present evidence and raise meritorious arguments at the hearing, (5) petitioner did not knowingly and intelligently waive his Miranda rights when confessing because he believed the District Attorney was his own lawyer, (6) discriminatory excusal of a potential juror by the trial court, (7) ineffective assistance of counsel by failing to object to the excusal of the potential juror, (8) a Sixth Amendment violation of being denied conflict-free counsel, (9) prosecutorial misconduct, and (10) cumulative error (Dkt. No. 1).

**ANALYSIS**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, applies to this action. Pursuant to AEDPA, federal courts may grant a writ of habeas corpus only if the state-court ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### 1. TIMELINESS.

AEDPA imposes a statute of limitations on petitions for writ of habeas corpus filed by state prisoners. Ordinarily, petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the date on which the judgment became final after the conclusion of direct review or the time passed for seeking direct review. 28 U.S.C. § 2244(d)(1). Petitioner's conviction became final on the day the Supreme Court denied his petition for writ of certiorari on October 21, 2013. The instant action was not filed until December 28, 2017. Thus absent any tolling, the action would be untimely.

The statute of limitations is statutorily tolled while a "properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Our court of appeals held in *Trigueros v. Adams* that when an appellate court issues an unreasoned denial request after asking for informal briefing on the merits despite a lower court's denial of a petition on the merits *and* untimeliness, the appellate court has impliedly overruled the lower court's timeliness decision. 658 F.3d 983, 991 (9th Cir. 2011). So too here. The California Superior Court denied the petition as untimely and on the merits. Petitioner then appealed. The California Court of Appeal asked for briefing, but ultimately denied the petition without any comment. Petitioner appealed again and the California Supreme Court denied the petition without an explanation.

Respondent concedes that *Trigueros* is controlling but argues it was wrongly decided, and rather asks this Court to look to *Ylst v. Nunnemaker* where the Supreme Court held that where there has been one reasoned judgment rejecting a federal claim for habeas relief, later

4

1 unexplained orders upholding the same judgment should be presumed to rest on the same
2 grounds as the reasoned judgment. 501 U.S. 797, 803 (1991). Respondent contends that
3 because the superior court here *sua sponte* determined the petition was untimely, it is more likely
4 the California Court of Appeal called for informal briefing because it wanted to make an
5 informed decision with input from both parties, not because it had already rejected the lower
6 court's ruling on timeliness.

Respondent's argument is taken, but *Trigueros* is nonetheless controlling. The appellate court in *Ylst* did not ask for further briefing as the *Trigueros* court or the California Court of Appeals did here. Furthermore, *Wilson v. Sellers* states that the "look-through" presumption in *Ylst* can be rebutted on the basis of convincing alternative arguments for affirmance made to the State's highest court or equivalent evidence presented in its briefing. 138 S. Ct. 1188, 1192 (2018). It would be unreasonable to assume that the California Court of Appeal asked for further briefing only to affirm the lower court's *sua sponte* decision on untimeliness without an explanation, especially because the briefing presented was petitioner's first instance of addressing timeliness. The petition for writ of habeas corpus here will thus be reviewed on the merits.

**2.    VOLUNTARINESS OF CONFESSION.**

Involuntary confessions in state criminal cases are inadmissible under the Fourteenth Amendment. *Blackburn v. Alabama*, 361 U.S. 199, 207 (1960). The voluntariness of a confession is evaluated by reviewing both the police conduct in extracting the statements and the effect of that conduct on the suspect. *Miller v. Fenton*, 474 U.S. 104, 116 (1985). Furthermore, the Fifth Amendment requires that a person subjected to custodial interrogation be advised that "he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Once properly advised of his rights, an accused may waive them voluntarily, knowingly and intelligently. *Id.* at 475

In determining the voluntariness of a confession, "the test is whether, considering the totality of the circumstances, the government obtained the statement by physical or

5

psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988) (citing *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963)). The erroneous admission of a coerced confession is subject to harmless error analysis. *Fulminante v. Arizona*, 499 U.S. 279, 306-12 (1991). In other words, habeas relief is appropriate only if the coerced confession had a "substantial and injurious effect or influence in determining the jury's verdict." *Pope v. Zenon*, 69 F.3d 1018, 1025 (9th Cir. 1995).

Petitioner here contends that his initial statement to the officers in the Oakland Police Department confessing that he fired six or seven shots at the Mustang was made involuntarily under coercive circumstances, and that the California Court of Appeal was unreasonable finding otherwise. *First,* petitioner cites to his interview circumstances, specifically that he was held in custody overnight for approximately twelve hours prior to his confession with minimal sleep and no food and water. *Second,* petitioner cites to instances during his interrogation in which the police allegedly made statements such as that he would be seen as a "monster" by the prosecutor if he didn't confess, that refusal to admit his guilt during the interview was "not gonna work very well for you," and that he was "taking a situation that's not as bad as it could be and making it as bad as it could be" (Dkt. No. 1, Appendix, Ex. 142, at 4334, 4337, 4343, , 4341). *Third,* petitioner points to his personal characteristics — that he was an uneducated, trauma-exposed, 18-year-old.

This order finds the California Court of Appeal reasonably found petitioner's statement voluntary. *First*, petitioner was offered food, drink, and the bathroom upon his arrest, which he turned down. He was told that if he changed his mind, he could knock on the door and let the officers know otherwise. He did not. He was in custody for those twelve hours without food and drink by choice. Furthermore, when a detective first entered the room to interview petitioner, he was asleep. That petitioner had difficulty or was uncomfortable sleeping prior to the interview does not make his statement involuntary.

*Second,* officers did not make any coercive statements that rendered petitioner's confession involuntary. Generally, coercive statements involve threats or false promises of

6

leniency. *Williams v. Woodford,* 384 F.3d 567, 595 (9th Cir. 2004). Although some of the officers' statements may have been deceptive in terms of mitigating the potential consequences of committing the crime, there is no indication in the passages cited by petitioner or anywhere in the record that shows the officers actually threatened petitioner or implicitly promised leniency. Rather, the statements indicate police told petitioner that denying guilt could worsen the situation, which is a common interview technique, and does not demonstrate a subject's incriminating answers are involuntary. At most, the officers' statements made petitioner feel as if confessing earlier rather than later could benefit his case. Such nominal pressure is insufficient to suggest coercion.

*Third,* petitioner contends the California Court of Appeal relied on improperly adduced evidence when determining that petitioner's personal characteristics weighed against finding voluntariness. Specifically, the California Court of Appeal referred to petitioner's previous drug-related arrest and juvenile record, which was not presented at the suppression hearing, in supporting its finding (Dkt. No. 13, Ex. 8 at 21). Regardless of whether such evidence was properly adduced, and even if evidence regarding petitioner's criminal history was ignored, the California Court of Appeal still reasonably found that based on the totality of the circumstances, petitioner confessed voluntarily. Petitioner was aware of the gravity of his crime. He stated "[y]ou know how serious a shooting is" to the interviewing officers, but nonetheless chose to confess (Dkt. No. 13, Ex. 2 at 435:1114). Even when he confessed, he made sure to emphasize his reason for shooting was self-defense, further emphasizing his awareness of the gravity of situation and the consequences of confessing. Coupled with the aforementioned interview circumstances and the fact that petitioner was an adult at the time of the interview, it was reasonable for the California Court of Appeal to find petitioner's confession was voluntary. Accordingly, this claim is **DENIED.**

### 3. EFFECTIVENESS OF COUNSEL.

An ineffective assistance of counsel claim ("IAC") is a cognizable violation of the Sixth Amendment right to effective counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any IAC claim is whether counsel's conduct undermined the proper

7

functioning of the adversarial process such that the trial cannot be said to have produced a just result. *Ibid*. The right to effective assistance of counsel applies whether counsel is retained or appointed. *See Cuyler v. Sullivan*, 446 U.S. 335, 344–45 (1980).

In order to prevail on a Sixth Amendment IAC claim, petitioner must satisfy two prongs. *First*, he must establish that counsel's performance was so deficient that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687–88. *Second*, he must establish that he was prejudiced by counsel's deficient performance, such that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Ibid*.

A doubly deferential judicial review is appropriate in analyzing IAC claims under Section 2254. *See, e.g., Cullen v. Pinholster*, 563 U.S. 170, 202 (2011). Under *Strickland*, a defense counsel's effectiveness is reviewed with great deference, which gives the state courts leeway in reasonably applying that rule, thereby "translat[ing] to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d). Both the performance and the prejudice components of the ineffectiveness inquiry are mixed questions of law and fact, thereby invoking the standard of review set forth in Section 2254(d)(1) — namely, whether the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See Strickland*, 466 U.S. at 698.

**A. Investigating and Presenting Evidence of Petitioner's Mental History.**

Petitioner contends his trial counsel, Mr. George Arroyo, rendered ineffective assistance because although Attorney Arroyo was aware that petitioner had been repeatedly victimized by gun violence, had an unstable home environment, and acted immaturely under stress, he still failed to investigate petitioner's mental history. Petitioner further contends that if Attorney

8

1 Arroyo had investigated this history, Attorney Arroyo would have uncovered petitioner's family's multi-generational history of abuse and mental impairment, which could have been presented as part of petitioner's defense.

This order finds that the California Superior Court reasonably determined trial counsel's performance was not deficient. In particular, Attorney Arroyo spoke to petitioner about his social history and even hired a psychological expert who uncovered further details about this history. Furthermore, the superior court also reasonably determined that counsel's actions were not prejudicial. Even if information about petitioner was presented, there was more than sufficient evidence at trial that petitioner did not shoot the victims out of fear of death or bodily injury to outweigh the complicating factors of petitioner's history and upbringing. For example, various witnesses testified that petitioner's truck pursued the victims and petitioner was the victim of a drive-by shooting at his uncle's home two days prior to the crime in question (Dkt. No. 13, Ex. 1). Accordingly, petitioner's IAC claim regarding his mental history is **DENIED**.

### B. Investigating and Presenting Evidence Victim was Part of a Drug Dealing Crew.

Petitioner also contends that his trial counsel rendered ineffective assistance by failing to fully investigate victim Giovanna Warren's criminal history and her family's criminal history. Petitioner agues that if Attorney Arroyo had fully investigated such criminal history, he would have uncovered that victim was a member of her family's violent drug dealing crew, and that information could have been used to undermine the prosecution's case that Giovanna was an innocent bystander and strengthened the defense's self-defense theory.

According deference to the state court findings, this order finds the California Superior Court reasonably determined that trial counsel's performance was not prejudicial. *First,* regardless of whether the victims were presented as innocent bystanders or members of a violent drug-dealing enterprise, there is not a reasonable probability the result at trial would have been different given the significant evidence that petitioner pursued the victims. *Second*, because of evidence presented that petitioner did not know who was driving the Mustang, evidence regarding victim's criminal history would not have strengthened petitioner's self-

9

defense (or voluntary manslaughter) theory so much that there would be a reasonable probability the result at trial would have been different. Petitioner's IAC claims regarding the victim's criminal background is **DENIED**.

### C. Presenting Evidence and Raising Meritorious Arguments at Suppression Hearing.

Petitioner further argues his trial counsel rendered ineffective assistance at a September 2010 suppression hearing. During that hearing, petitioner moved to suppress statements he'd made to law enforcement that allegedly violated his Fifth and Sixth Amendment rights. Tiffany Danao, a law student under the supervision of trial counsel, argued on behalf of petitioner. Her performance, and accordingly, Attorney Arroyo's performance, was deficient, he now says. Petitioner points to an interaction during the hearing where Danao asked Sergeant George Phillips whether petitioner was allowed to make any phone calls while in custody at the Oakland Police Department. Sergeant Phillips responded, "I think he was offered a phone call and he denied it at 1:00 a.m" (Dkt. No. 1, Appendix A, Ex. 129, at 2034.). However, a DVD recording of the interrogation shows petitioner asked if he could "at least make some calls" and that, Sergeant Todd Crutchfield responded, "I can give [your mother] a call myself if you want me to and let her know [you're alright], but we can't let you do that." Sergeant Crutchfield did not make a call to petitioner's mother and informed petitioner so prior to his confession (Dkt. No. 1, Appendix A, Exh. 111 at 01:00:39 AM). Petitioner also did not make a call until approximately twelve hours after making his initial request for a phone call.

Petitioner points to multiple flaws in this hearing to support his contention that trial counsel did not render effective assistance. *First,* petitioner argues trial counsel failed to adequately to support the suppression motion on voluntariness grounds based on the allegation that he was unable to place a call while in custody in a timely manner. Petitioner contends if Danao had performed effectively, she could have successfully suppressed petitioner's confession and subsequent statements made in violation of his constitutional rights. The confession and statements were critical at trial.

California law provides that an arrestee has a statutory right to make "at least three

10

completed phone calls... [i]mmediately upon being booked and, except where physically impossible, no later than three hours after arrest." Cal. Penal Code § 851.5(a)(1). Here, petitioner did not make a call until after he confessed, nearly twelve hours after he made his first request for a call. Although this is a violation of California's Penal Code, it is not a violation of petitioner's due process as a phone call is not a due process right. Still, the Sixth Amendment insists that counsel provide an effective defense, taking into account all of the avenues available. One avenue here would have been to impeach Sergeant Phillips with the video. Regardless of whether counsel's failure to bring this up at the suppression hearing was deficient, it was not prejudicial. As explained above, there was a significant amount of evidence demonstrating petitioner's confession was voluntary and the fact that he did not make a call until after his confessions would not have changed the outcome at trial or the hearing.

*Second,* petitioner argues that if trial counsel had properly supervised Danao or alternatively if she had performed competently, Danao would have proved Sergeant Phillips's testimony was false, which would have been independently relevant at trial. Petitioner has not sufficiently demonstrated that Sergeant Phillips's statement would be enough to impeach him at trial or false. As respondent argues, Sergeant Crutchfield spoke to petitioner at 1 a.m. and Sergeant Phillips merely interpreted Sergeant Crutchfield's notation in the report which stated stated, "0100 ck'd, req'd phone call—denied" (Dkt. No. 1, Appendix, Appendix, Exh. 67 at 463) during the suppression hearing. Furthermore, although Sergeant Phillips provided testimony regarding petitioner's self-defense at trial, the prosecution presented significant evidence at trial casting doubt on this defense such as petitioner's confessions. Accordingly, even if Sergeant Phillips was impeached, there is not a reasonable probability the result at trial would have been different.

*Third,* petitioner contends trial counsel failed to adequately support to the motion with evidence of petitioner's complex trauma. Petitioner has made multiple claims related to his troubled upbringing. Again, it is reasonable to conclude counsel knew of petitioner's background and tactically chose not to present it at the hearing. Such a tactical decision is not deficient performance. Furthermore, even if deficient, the failure to support the motion with

11

such evidence is not prejudicial. Given the evidence supporting the voluntariness of petitioner's confession explained above, there is not and was not a reasonable probability the result at the hearing or trial would have been different if evidence regarding petitioner's mental history and trauma had been presented. Accordingly, petitioner's IAC claims regarding the suppression hearing are **DENIED**.

### 4. SIXTH AMENDMENT RIGHT TO CONFLICT-FREE COUNSEL.

A criminal defendant is entitled under the Sixth Amendment to an effective attorney who can represent him competently and without conflicting interests. *Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir. 1994). An "actual conflict" is "a conflict that adversely affects counsel's performance" and not a "mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171-72 & n.5 (2002). The "adverse effect" is shown if some plausible alternative defensive strategy or tactic might have been pursued but was not and the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. *United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005).

If petitioner can show an "actual conflict of interest" then prejudice is presumed if the conflict arises from defense counsel's representation of multiple codefendants. *United States v. Walter-Eze*, 869 F.3d at 905 (citing *Mickens v Taylor*, 535 U.S. 162, 174-75 (2002)). The Supreme Court has not expanded this presumption of prejudice to any other context. In cases where there is no presumed prejudice from an "actual conflict of interest," petitioner must show prejudice under *Strickland*.

Here, the Office of the Alameda County Public Defender represented petitioner at trial. The Office also had represented victim Giovanna Warren in multiple cases and probation revocation proceedings prior to her death as well as Sylvia Warren, a witness in petitioner's case. *See, e.g.*, Dkt. No. 1, Appendix A, Exh. 70. Petitioner alleges trial counsel's performance was adversely affected by this conflict of interest in that he did not adequately cross-examine Sylvia Warren nor present information about Giovanna Warren and her family members' involvement in a violent drug-dealing enterprise. As a result, petitioner argues an evidentiary hearing is necessary to determine if an actual conflict existed.

12

This order does not need to make a finding in regards to whether an actual conflict existed as this is not a case where defense counsel represented multiple codefendants. The record here is sufficient to find that the California Superior Court reasonably determined petitioner's Sixth Amendment rights were not violated. Specifically, this order finds no prejudice resulted from the fact that the Alameda County Public Defender's Office had represented Giovanna Warren and Sylvia Warren at some point. As expounded upon above, trial counsel's failure to present evidence about Giovanna Warren and her family's involvement with violent drug dealing did not prejudice petitioner because such information would not have materially strengthened his self defense or voluntary manslaughter theory. Furthermore, Sylvia Warren merely testified about Giovanna's background and her whereabouts prior to the shooting. Such over-the-top attacks on the witness would have backfired in the eyes of the jury or so a reasonable defense lawyer could have surmised. Even if trial counsel cross-examined her in the way that petitioner contends he should have, there is not a reasonable probability the result of the trial would have been different given the insignificant nature of her testimony. Accordingly, this claim is **DENIED**.

### 5. PROSECUTORIAL MISCONDUCT.

A habeas court may take into account various factors in determining whether prosecutorial misconduct occurred such as whether there was a violation of due process, the weight of evidence of guilt, whether the misconduct was isolated or part of an ongoing pattern, and whether the misconduct relates to a critical part of the case. Petitioners are not entitled to habeas relief unless they can establish that the misconduct resulted in "actual prejudice." *United States v. Young*, 470 U.S. 1, 19 (1985); *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987); *Giglio v. United States*, 405 U.S. 150, 154 (1972).

*Brady* violations are a form of prosecutorial misconduct. To allege a *Brady* violation, petitioner must show that the prosecution suppressed materials: (1) willfully or inadvertently, (2) that are favorable to the accused, either because it is exculpatory or impeaching, and (3) that are material (or, put differently, that prejudice ensued). Evidence is material if "there is a

reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009).

This order finds the state court reasonably determined petitioner failed to state a claim of prosecutorial misconduct. *First,* petitioner contends prosecutors failed to disclose *Brady* materials regarding the victim's and her family's criminal history. Regardless of whether the materials regarding the Warren family's criminal history are favorable, they are not material. Even if petitioner knew of the Warren family's criminal history and feared them as he contends, it didn't change petitioner's statement that he didn't know who was driving the Mustang the day he shot at it. As explained above, given the weight of the evidence against petitioner, further evidence regarding the Warren family's criminal history would not have strengthened petitioner's self-defense (or voluntary manslaughter) theory so much that it would have changed the outcome of the trial.

*Second,* petitioner seems to also contend misconduct occurred when the prosecution did not correct statements by Sylvia Warren that the Mustang had been rented for Giovanna Warren by Charles Felix, that she did not know what Giovanna did for money, and that Giovanna never had a reason to carry around weapons. Petitioner claims such statements were misleading or false because Mr. Felix reported the Mustang stolen after Giovanna drove off with it even though the two knew each other. Petitioner also claims the statements were misleading because the Warren sisters were part of a drug-dealing crew and because Sylvia Warren removed Giovanna Warren's purse from the scene of the crime, which could have held a gun. Such speculations are not sufficient to demonstrate the prosecution engaged in misconduct when failing to correct these statements. It is unclear if the prosecution needed to even correct them as there was nothing overtly false about the implications of these statements. Furthermore, given the significant weight of evidence against petitioner, prejudice did not result from the failure to correct these statements. Accordingly, the state court was reasonable in its determination and petitioner's prosecutorial misconduct claim is **DENIED**.

    **6.**     **ADMISSION OF STATEMENT TO DISTRICT ATTORNEY.**

After petitioner's initial interrogation, Deputy District Attorney Leventis and Investigator Nina Garcia entered the room. The following exchange occurred:

| | |
|---|---|
| Petitioner: | This like a lawyer? |
| Leventis: | No, I'm a lawyer. |
| Petitioner: | You're a lawyer? Oh I was just going to ask if I could see one. |
| Leventis: | Yeah, you're – well let me ask you this. What did you just tell me? You wanna talk to us first or I was gonna go through some stuff with you. I'm Joni Leventis. I'm the Deputy D.A. so I'm a district attorney. |
| Petitioner: | Mm-hm. |

Deputy District Attorney Leventis then read petitioner a Miranda waiver form which he initialed after agreeing to speak about the case. During the interview, petitioner confessed to the crime again. Various statements from this interview were later used in trial. Petitioner emphasizes that one of the key pieces of evidence taken from the confession and used at trial was "that petitioner had already pulled out his gun when he encountered the Mustang parked at the school." At the conclusion of the interview, petitioner revealed he had mistakenly believed Deputy District Attorney Leventis was his own attorney (Dkt. No. 13, Ex. 2 at 469–540).

*First,* the state court reasonably determined petitioner did not unambiguously invoke his *Miranda* rights when he stated, "You're a lawyer? Oh I was just going to ask if I could see one." Petitioner's statement was forward looking, not an unambiguous affirmative statement requesting an attorney at that moment.

*Second,* it is, however, plausible petitioner may have been confused as to whether Deputy District Attorney Leventis was his attorney. This does cast his *Miranda* waiver in a questionable light. Regardless, petitioner had previously already waived his *Miranda* rights, had admitted to his mother and daughter's mother that he had confessed over the phone knowing the phone calls were monitored. Importantly, even after he realized his alleged mistake regarding the Deputy District Attorney, petitioner stated he had been truthful and did not raise any objections about his confession (Dkt. No. 13, Ex. 2 at 537:3134–3139). The

15

totality of the circumstances thus do not necessarily indicate the *Miranda* waiver was not knowing and voluntary.

Further, even if petitioner's did not knowingly and voluntarily waive his *Miranda* rights, the claim still fails because no prejudice resulted. Petitioner argues the prosecution used multiple critical statements from this interview during trial regarding the elements of intent to kill, deliberation, and to negate petitioner's self-defense argument. Nonetheless, the prosecution also used many items of evidence other than those statements to support these arguments at trial. For example, petitioner had admitted in the first interview that he and Cantres had intended to follow the Mustang because of the shooting at his uncle's home. Videotapes showed the truck following the Mustang. Petitioner also made false or inconsistent statements to the detectives in his first interview that contradicted witness testimony and his self-defense theory (*id.* at 452, 454–59, 462). It is accordingly unlikely the result at trial would have been any different. According deference to the state court's findings, this claim is **DENIED**.

**7. JUROR SELECTION.**

During an in camera discussion regarding challenges for cause, the following exchange occurred between the court, Attorney Arroyo (defense counsel), and Mr. Timothy Wellman (prosecution) (Dkt No. 13-13, Ex. 4, at 318):

| | |
|---|---|
| Court: | I have a challenge for cause for juror number three. I can't imagine either one of you taking that lady. A neopagan? |
| Wellman: | I'd certainly stipulate to her, your honor. |
| Arroyo: | I'll submit it. I wasn't offended by that. I thought she could be fair. |
| Court: | Well, you haven't smelled her. |
| Arroyo: | No I have not. |
| Court: | She stinks. She doesn't bathe. Ask Bervin. |
| Arroyo: | I'll submit it. |
| Court: | All right. I'll excuse her. |

16

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal ground and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Here, the California Court of Appeal held that petitioner forfeited his claim of discrimination by the trial court by failing to object to the juror's excusal and defense counsel's willingness to twice submit the matter. California's contemporaneous objection rule is an independent ground to support the judgment. Petitioner, however, contends it is not an adequate ground because invidious discrimination by a judge is subject to a different standard. If the trial court judge had only said, "I have a challenge. A neopagan?" petitioner would have a stronger case. However in the context of the full conversation, the California Court of Appeal reasonably interpreted that the trial court judge did not explicitly challenge the juror due to religion, but rather more likely her odor. Petitioner makes hay out of the fact that the California Court of Appeal stated multiple times that exclusion "solely"on the grounds of religion is improper. However, the opinion also acknowledged the judge found the juror's odor offensive and ultimately focused on the lack of objection as the grounds for denying the claim. The California Court of Appeal's decision was thus reasonable and not contrary to federal law. Furthermore, the California Court of Appeal reasonably determined the facts by deferring to the transcript of the conversation that took place between the judge and the juror and the later in camera discussion. It is of no import whether the juror was actually unhygienic or who smelled the juror; what is important is that there is no evidence that suggests the trial judge excused the juror because of a protected characteristic and not her odor. Petitioner's counsel did not object to the trial court judge's challenge of the juror. He did submit the matter as petitioner emphasizes, but that is not the same as explicitly objecting. The colloquy above is thus subject to the California contemporaneous objection rule. Since this is a state law that is independent of a federal ground, and this order finds the California Court of Appeal reasonably rested its judgment on this state law, petitioner's claim here is procedurally barred. Petitioner's claim of improper jury excusal is thus **DENIED** .

Relatedly, petitioner also contends Attorney Arroyo rendered ineffective assistance by failing to object to the trial court judge's excusal of the juror. As explained above, this is not a case of religious discrimination nor judicial misconduct as petitioner contends that would require a different standard to be applied. Under the *Strickland* standard, petitioner has not shown that the juror would have voted differently than the twelve seated jurors who found petitioner guilty. Thus, petitioner's claim for ineffective assistance of counsel in failing to object to the excusal of the juror is also **DENIED**.

### 8. CUMULATIVE ERROR.

"[P]rejudice may result from the cumulative impact of multiple deficiencies." *Harris v. Wood*, 64 F.3d 1432, 1438 (9th Cir. 1995) (quoting *Cooper v. Fitzharris*, 586, F.2d 1325, 1333 (9th Cir. 1978) (en banc), cert. denied, 440 U.S. 974 (1979)). Petitioner has failed to show any substantial error as a result of the above claims as discussed. Regardless of whether the state superior court habeas decision failed to conduct cumulative error review, petitioner has not shown in this instant petition the state superior court unreasonably applied clearly established federal law or unreasonably applied the facts to that law in any of the aforementioned claims. Where there is no substantial error existing, cumulative prejudice is not possible. *See Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011). Accordingly, this claim is **DENIED**.

Finally, petitioner's request for an evidentiary hearing is **DENIED**. Where, as here, the record is amply developed, a district court is not obligated to hold evidentiary hearings to further develop the factual record. *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010).

## CONCLUSION

For the reasons stated above, the petition seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254 is **DENIED.** Judgment shall be entered separately.

**IT IS SO ORDERED.**

Dated: September 16, 2019.

WILLIAM ALSUP

UNITED STATES DISTRICT JUDGE